### HOFHEIMER v. AMERICAN DISTRIBUTING CO.

(Supreme Court, Appellate Division, First Department. November 11, 1898.)

EMPLOYMENT—LIABILITY FOR SERVICES—EVIDENCE.

> Defendant corporation, engaged in selling the produce of a manufac-turing corporation on a certain system, is not liable for plaintiff's serv-ices in obtaining contracts for another corporation, selling such produce on another system, from persons who would not buy on defendant's sys-tem; such corporation not being shown to be a branch or agent of de-fendant, and his testimony that he was employed in defendant's behalf, with the knowledge of its president, by its vice president, who was also interested in the manufacturing company, being denied by them; and the manager of the other selling corporation, who had previously been defendant's secretary, and who induced plaintiff to discontinue suit

against the manufacturing corporation for the services, by representations that defendant was the responsible party, having no authority to make the representations for defendant.

Appeal from judgment on report of referee.

Action by Nathan Hofheimer against the American Distributing Company. From judgment for defendant on report of referee, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, McLAUGHLIN, and INGRAHAM, JJ.

Alfred A. Cook, for appellant.
Alfred B. Thacher, for respondent.

PATTERSON, J.    Issues of fact only are involved in this appeal. The action was brought to recover the value of services alleged to have been rendered by the plaintiff to the defendant in procuring contracts to be made by the firms of Steinhardt Bros. & Co. and Engel, Heller & Co., for the purchase of merchandise, the allegations of the complaint being that the defendant employed the plaintiff to procure the contracts to be made, and that the services were rendered pursuant to the employment. The defendant denies those allegations, and the simple question is whether the plaintiff has established his case by a preponderance of proof. Upon conflicting testimony, the referee has decided the issues of fact adversely to the plaintiff; and, upon a careful examination of all the evidence appearing in the record, we see no reason for differing with him in his conclusion.

The principal facts may be briefly stated: There were three corporations or business concerns engaged in selling or distributing alcohol and spirits. The Distilling & Cattle-Feeding Company was one; the defendant, the American Distributing Company, another; and the third was a concern called the Independent Distributing Company. It would appear that the Cattle-Feeding Company was engaged in the business of distilling; that the American Distributing Company sold the products of the Cattle-Feeding Company in Eastern territory, upon what was called a rebate system,—that is to say, purchasers would deposit with the defendant seven cents a gallon in addition to the agreed price of the merchandise, and, at the expiration of certain stated periods, such purchasers would have returned to them the amount of their deposit in excess of the purchase price. The defendant's business was conducted entirely upon that plan. It also appears that there were important dealers in spirits and alcohol who would not transact business upon that basis, and it was desired to secure the trade of such persons. Among them were the two firms of Steinhardt Bros. & Co. and Engel, Heller & Co. Those interested in the American Distributing Company and the Cattle-Feeding Company were to a large extent the same parties, and among others so situated was a Mr. Terrell. He was the vice president of the defendant. The American Distributing Company was incorporated in the fall of 1891. In order to attract purchasers of the Cattle Company's products, who would not deal on the rebate system, the scheme was devised of conducting business under the

name of the Independent Distributing Company, and that business was put in the charge of a Mr. Quinn, as manager. The negotiations concerning the establishment of the business of the Independent Distributing Company were had at the office of the defendant, and the contention on the part of the plaintiff is that this Independent Company, or Mr. Quinn, doing business as the Independent Distributing Company, was only an agency or branch of the defendant's business; and that its contracts were contracts of the defendant. The plaintiff did procure contracts to be made to purchase goods by the firms of Steinhardt Bros. & Co. and Engel, Heller & Co., but those contracts were made in terms with the Independent Company. They are in writing and appear in the record. They were signed by the Independent Distributing Company, per L. H. Quinn, manager, and also by the contracting firms respectively. The service of the plaintiff in negotiating these contracts is fully proven, but he failed to show that the defendant employed him to render that service. His own statement is that the first person with whom he had any conversation regarding the business of Steinhardt Bros. & Co. was Mr. Terrell, and that, at the first interview he had with Mr. Terrell, the latter wanted to know whether the outside houses could be brought into the American Distributing Company; and he told him that it could be done, that he knew Mr. Heller, and that he also knew Steinhardt Bros. & Co., and that possibly an arrangement could be made; and he then proceeds to say that he took two or three months to convince those people that it would be to their mutual advantage to buy their goods from the American Distributing Company. He also swears that he reported to Mr. Terrell what could be done, and that he was told to go ahead, and make the contracts with the Independent Distributing Company, he (Terrell) saying that "that would be the same, as they were buying without rebates, and the American Distributing Company was selling only with rebates." He further swears that there never was any question with Mr. Terrell about the Independent Distributing Company, and that it never came up until the closing of the contracts; and it was not until his negotiations were ended that it was stated that the contracts were to be made in name with the Independent Distributing Company. Mr. Terrell flatly contradicts the testimony of the plaintiff in this regard. He testified that he told the plaintiff that the Distilling & Cattle-Feeding Company wanted to extend their business in the East, and that they wanted the Engel and Heller trade, and also the Steinhardt trade, and that the plaintiff said his relations with both those firms were such that he would be able to bring about an arrangement. Mr. Terrell also swears that he did not tell Mr. Hofheimer that he was acting for the American Distributing Company, and that he did not ask Mr. Hofheimer to get a contract for the American Distributing Company, and that he never told anybody that he had employed Hofheimer for the American Distributing Company.

Upon the initial fact in the negotiations respecting the employment, the referee has accepted the version of Mr. Terrell; and we think, on the whole case, he was authorized so to do. There is nothing to corroborate the plaintiff with respect to this particular topic·

of evidence.    The plaintiff also testified that Mr. Curtis, the president
of the defendant, knew of his employment, and of the service he had
undertaken for the defendant; but Mr. Curtis says that he never
had any knowledge or understanding that the plaintiff was acting
in the negotiations with the two firms mentioned on behalf of the
defendant.

Concerning the contention of the plaintiff that the Independent Dis-
tributing Company, or Mr. Quinn, was a branch of the defendant,
or that Quinn was merely an agent of the defendant, or of an undis-
closed principal, and that the services rendered by the plaintiff were
really for the benefit of the defendant under the name of the Independ-
ent Distributing Company, and that his employment emanated from
the defendant, the referee considered, on all the evidence, that the
Independent Company was a branch of the Distilling & Cattle-Feed-
ing Company, started by Quinn or managed by him, and was not
connected with the defendant, except as purchasing some goods from
it, or having a transaction with it, confined to one or two items drawn
into the case by the relation of Engel, Heller & Co. upon some ante-
cedent contract with the Nebraska Distilling Company, which are
not involved in any direct question connected with the action.    Mr.
Quinn, who was the secretary of the defendant, at one time says
that he was the manager of the Independent Distributing Company,
and that the American Distributing Company had in fact nothing
to do with it, and that the Independent Distributing Company was
in the interest of the Distilling & Cattle-Feeding Company; that the
Independent Company was organized by one Greenhat, and by Mr.
Terrell, at the office of the defendant, and at or after a regular meet-
ing of that company; but from certain transactions had at meetings
of the American Distributing Company, and certain resolutions re-
ferred to by the referee in his opinion, the inference is sought to be
drawn that the Independent Company was instituted by and in the
interest of the defendant, and that its business was the business
of the defendant.    But the purpose and object of those resolutions
is explained in the testimony, and nothing need be added to the com-
ments of the referee upon them.    It would appear from the testi-
mony that the establishment of the Independent Company was a mat-
ter of discussion at a meeting of the directors of the defendant, and
that the proposition came from the officers of the Distilling & Cattle-
Feeding Company, and that the project was opposed by some of the
directors of the defendant; that it was finally acquiesced in, not as
establishing a branch business of the defendant, but as the creation
of an agency for the sale of the Cattle Company's products.    The
attitude of the plaintiff after the contracts were made with the Inde-
pendent Company by the two purchasing firms clearly indicated that
he was himself uncertain upon whom liability to him rested.    He sued
the Cattle-Feeding Company upon this same claim, but was induced
to discontinue his action upon statements of Quinn that this defendant
was the responsible party.    Mr. Quinn had no authority to make these
representations for the defendant, and nothing that he could say
would change the relation existing between the plaintiff and his em-
ployer, whoever it was.    The whole drift of the testimony shows that

54 N.Y.S.—18

it was not the defendant, but strongly tends to indicate that it was the Distilling & Cattle-Feeding Company.    The defendant cannot be held responsible because Mr. Quinn may have diverted the plaintiff from pursuing his proper action.

Upon the whole case, it is quite apparent that the plaintiff failed to sustain his cause of action, and that the judgment appealed from must be affirmed, with costs.    All concur.